**Richard N. ALBER, Plaintiff,**

v.

**NORFOLK & WESTERN RAILWAY COMPANY, Defendant.**

No. 79–541C(A).

United States District Court,
E. D. Missouri, E. D.

April 16, 1980.

Anne Travis Shapleigh, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Albert E. Schoenbeck, Schoenbeck, Tucker & Schoenbeck, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

HARPER, District Judge.

This is an action under the Vietnam Era Veterans' Readjustment Act of 1974 (hereinafter referred to as VEVRA or Act), 38 U.S.C. §§ 2021–2026 (1974), to obtain a lump sum separation allowance that was offered certain "protected" employees of the defendant, Norfolk & Western Railway Company (hereinafter referred to as Norfolk) under a Memorandum Agreement of May 1, 1976 (Memo 1976). Plaintiff alleges that upon his return from military service in 1968, his employer, Norfolk, improperly prevented him from "bidding" on positions which it had bulletined during his absence. Had plaintiff been permitted to bid upon a bulletin for the position of Interline Switching Clerk (hereinafter referred to as Interline Clerk or Position) he allegedly would have later become eligible for the Memo 1976 allowance.

Alber began working for Norfolk on September 21, 1965, as a file clerk. The parties have stipulated that plaintiff's position was "other than temporary" within the meaning of the Act. Two distinct agreements (or sets of agreements) governed Alber's employment with Norfolk. A collective bargaining agreement, the Agreement Between the Wabash Railroad Company and Employees Thereon, Effective May 1, 1953 (hereinafter referred to as Contract), required under Rule 17(a) that Norfolk bulletin new positions or vacancies in accessible places so that employees could, on their own initiative, "bid" for the assignment. Contract Rule 17(b) further required that employees returning from furlough (defined as an absence greater than 30 days) be given the opportunity to bid upon all bulletins posted during their absence. The Contract also provided under Rule 15 that seniority rights were to be exercised within geographically defined seniority districts.

A second series of agreements concerned defendant's redistribution of clerical positions throughout its rail system. A Memorandum Agreement of April 7, 1965, states that Norfolk and the Brotherhood of Railway, Airline and Steamship Clerks (hereinafter referred to as Union) are "to cooperate [in the merger of several railroad companies] by entering into an implementing agreement providing for the transfer and use of employees and the allocation or rearrangement of forces made necessary by changes for which protection is provided in said agreement." The implementing agreement, the Memorandum Agreement of December 2, 1965 (hereinafter referred to as Memo 1965), reserved to Norfolk the discretionary right to transfer clerical employees and positions throughout its rail system so long as it awarded employees who wished not to transfer with their position a "protected" utility status. "Protection" under Memo 1965 included a minimum rate of pay no less than the position transferred and permanent protection from layoffs. Plaintiff's status was not protected under Memo 1965 prior to military service.

On July 15, 1966, Alber was drafted into the Armed Forces and was given a leave of absence by defendant. During Alber's service Norfolk bulletined several positions in its St. Louis seniority district for bids by employees, including the Interline Clerk position. The position was filled by Evans, an employee junior in seniority to Alber. On August 1, 1967, prior to plaintiff's return from the service, the position was transferred to Virginia. Evans elected not to transfer to Virginia and thus became a "protected" utility employee under Memo 1965. When Alber returned to Norfolk from the service on July 23, 1968, he was offered a choice of positions from among those then available in the St. Louis seniority district. Alber was not offered the Interline Clerk position or Evans' utility status. Plaintiff chose the highest listed position offered.

On May 1, 1976, Memo 1976 canceled Memo 1965 and granted transfer protected employees a lump sum severance allowance if they would resign on or before May 31, 1976. Alber offered to resign on May 7, 1976, claiming transfer protection on the theory that had he been able to bid on the bulletin for Interline Switching Clerk during his military service he would have received that position and its subsequent transfer protection. Norfolk denied plaintiff's claim and this suit followed.

Norfolk raises two defenses in this action. It asserts that Alber's claim is barred by the doctrine of laches in that approximately eleven years elapsed between the date of plaintiff's return from the service and the date this suit began. It further asserts that plaintiff was in fact restored to all statutory benefits upon his return from the service in 1968.

VEVRA provides that "(n)o State statute of limitations shall apply to any proceedings under this chapter." 38 U.S.C. § 2022 (1974). The Eighth Circuit recently construed this provision to bar all reference to state statutes of limitation in applying the doctrine of laches, stating that "Congress did not consider the differing state legislative determinations regarding stale claims to be an appropriate guide for courts confronted with veteran reemployment actions." *Goodman v. McDonnell Douglas,* 606 F.2d 800, 806 (8th Cir. 1979). *Goodman* stressed the distinction between a statute of limitation's focus on time and laches' emphasis on "the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relations of the property or the parties." 606 F.2d at 805, quoting *Galliher v. Caldwell,* 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892). Therefore, this Court must determine whether plaintiff has unreasonably and inexcusably delayed in bringing this action and, if so, whether said delay has prejudiced the defendant.

■ This Court holds that plaintiff inexcusably delayed bringing this action, that the delay has prejudiced the defendant, and that this claim is barred by the doctrine of laches. Upon his return from the service in 1968 Alber asserted neither statutory reemployment rights nor Contract Rule 17(b) rights (to bid upon all positions posted in his absence) in spite of Union representation. The Court is not unaware that the Supreme Court's liberal constructions of VEVRA require it to hesitate in denying veterans reemployment rights on grounds of laches, *Tilton v. Missouri Pacific Railroad,* 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964), and that this suit is brought primarily to recover a benefit first made available in 1976. This Court finds, however, that the lump sum severance allowance here sought is simply one of a series of compensatory rights offered employees affected by merger transfers, and that plaintiff's interest in merger protection benefits is quite belated. There has been no claim that plaintiff, who began working for Norfolk approximately two months before merger protection became available, did not know of those special benefits when he left for the service in 1966. Plaintiff's claim that Norfolk had a duty to inform Alber of his statutory rights does not explain why Alber did not seek contractual merger protection rights in other forms over the eleven years prior to this suit.

■ The *Goodman* court recognized two kinds of prejudice which might support a claim of laches. *Goodman,* 606 F.2d 800, 808, n. 17, citing *Tobacco Workers International Union Local 317 v. Lorillard Corp.,* 448 F.2d 949, 958 (4th Cir. 1971). There must be either a loss of evidence which supports the defendant's position or a change of position by defendant in reliance upon plaintiff's delay. *Ibid.* This Court finds prejudice to Norfolk in forcing it to defend an action for which progressively less evidence is available over time to determine the certainty of plaintiff's alleged promotion.

This Court must find for plaintiff if his progression to Interline Switching Clerk would have been a reasonably foreseeable event had he not entered the Armed Forces. *Alabama Power v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). The fore-

seeability of plaintiff's progression is, under the Contract bid system, largely a question of Alber's subjective intent to take the affirmative steps necessary to bid for the position and to remain in St. Louis after the position was transferred. Alber's delay has reduced his claim to a swearing contest inasmuch as these crucial issues must be decided without corroborating witnesses or evidence. It is not at all clear from the record that Alber would have bid upon the position of Interline Clerk, or that if he had bid upon and accepted the Position he would have remained in St. Louis rather than transfer to Virginia. Plaintiff's self-serving assertions that he would have bid upon the Position and have remained in St. Louis are no more helpful than Norfolk's evidence that Alber did not bid upon certain qualitatively unknown bulletins prior to military service. This Court finds that plaintiff's delay in seeking merger protection status has negated the ability of both defendant and this Court to reliably examine this claim. Thus, there has been both inexcusable delay and prejudice to the defendant, and the doctrine of laches applies.

Plaintiff's claim is on no more solid ground on the merits than it is on the laches issue. Alber alleges that Norfolk failed on July 15, 1968, to offer him the status he would have received had he continued in employment during his time of military service under 38 U.S.C. § 2021(b)(2). VEVRA provides:

"(a) In the case of any person who is inducted into the Armed Forces * * * and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such * * service * * *

"(B) * * * such person shall—

"(i) * * * be restored by such employer * * * to such position or a position of like seniority, status, and pay; * * *." 38 U.S.C. § 2021 (1974).

The Act further provides that a reemployed veteran is to be considered as having been on furlough during service and that that person should be given such status as he would have enjoyed had he remained in employment continuously. It is not clear from the record whether the merits of plaintiff's complaint lie strictly in his reemployment rights under VEVRA or whether plaintiff complains that improper administration of the Contract resulted in a violation of VEVRA. This Court will address both theories.

■ This Court finds that under the VEVRA "escalator principle," 38 U.S.C. § 2021(b)(2), the right to bid upon bulletined positions was not a status of seniority to which plaintiff was entitled upon return from the service. The bulletins posted pursuant to Contract Rule 17 are neither direct offers for promotion nor company solicitation of employee applicants, as was the case in *Barrett v. Grand Trunk Western R.*, 581 F.2d 132 (7th Cir. 1978). The act in this case of bidding upon a position is to be distinguished from cases where an employee has already taken affirmative steps toward promotion and the remaining steps occur automatically, such as *Tilton v. Missouri Pacific Railroad*, supra, and *Pomrening v. United Air Lines*, 448 F.2d 609 (7th Cir. 1971), or cases where a benefit accrues without affirmative steps by the employee, such as *Alabama Power v. Davis*, supra. While there was persuasive testimony that seniority is a decisive factor in selecting the successful bidder for a position, there was no evidence that seniority in any way governs submission of a bid or that Norfolk plays any role in soliciting bidders for a bulletin. *Tilton's* "unpredictable circumstances" doctrine, cited by plaintiff, is not applicable to this case because it holds only that such variables and contingencies as illness, failure to accept a promotion, or layoffs do not defeat a veteran's right to automatic company benefits, such as seniority rights; and it did not cover matters of affirmative employee acts to obtain company positions. Thus, this Court finds that the right to bid upon bulletins is a right separate and distinct from the benefits of seniority, and that plaintiff is not seeking a status within VEVRA.

Plaintiff also alleges that defendant violated VEVRA by not offering plaintiff all positions bulletined during his absence as if he was a furloughed employee under Contract Rule 17. 38 U.S.C. § 2021(b)(1) provides that "(a)ny person who is restored to or employed in a position * * * shall be considered as having been on furlough or leave of absence * * *." Plaintiff's evidence in this action represents only that upon his return on July 15, 1968, he would have bid on a position bulletined during his absence and transferred to Virginia on August 1, 1967. Plaintiff thus suggests that upon his return he was entitled to the rights of the junior employee who had taken utility status instead of transferring to Virginia. This Court assumes, without so deciding, that a suit against this defendant and not the Union is the proper action to vindicate the asserted rights under Contract Rule 17 and 38 U.S.C. § 2021(b)(1).

■ This Court finds, as a matter of Contract construction, that plaintiff had no right in returning to Norfolk's employ as a furloughed employee to bid upon either positions since transferred or utility statuses were under the merger protection agreements. The Contract does not expressly cover circumstances in which positions bulletined during furlough are also transferred to other seniority districts during that same furlough period. This Court finds that plaintiff's proposed construction of Contract Rule 17(b), to permit a furloughed worker to bid upon both transferred and non-transferred positions bulletined in his absence, clearly distorts the contractual regional scheme for assigning positions by seniority. Contract Rule 15 contemplates distinct geographic seniority districts in which employees are placed according to their relative length of service. There is no nationwide seniority competition for positions with Norfolk. This Court cannot ignore Rule 15 and permit plaintiff to bid upon all positions bulletined throughout the Norfolk system during his furlough based on this literal construction of Rule 17. This Court finds that a furloughed employee under this Contract has no right to bid upon positions bulletined in his seniority district

during his absence and transferred to another seniority district prior to his reemployment.

This Court further finds that plaintiff had no contractual right to bid upon a "utility" status upon his return from furlough. Evans' utility status was compensation awarded by Norfolk for exercise of its discretion to transfer clerical positions throughout its rail system. This protection is not a position an employee might bid upon, but a compensatory package of personal rights by which employees are placed in a holding pattern until a permanent position can be found. There is no indication in the merger protection agreements that either Norfolk or the Union intended thereby to create any new permanent classification or position. Thus, this Court finds no contractual violations of plaintiff's rights in failing to permit him to bid upon a position transferred to another seniority district or a utility position.

Accordingly, this Court finds no violation of the Vietnam Era Veterans' Readjustment Act of 1974 and judgment will be in favor of the defendant.

The Court adopts this memorandum opinion as its findings of fact and conclusions of law and the clerk of the Court will prepare and enter the proper judgment.