714 F.2d 793
 113 L.R.R.M. (BNA) 3774, 98 Lab.Cas. P 10,378
 John A. BRANDT, Appellant,
United Transportation Union, M.N. & S. Committee of
Adjustment, Local 650,
v.
MINNEAPOLIS, NORTHFIELD AND SOUTHERN RAILROAD COMPANY, Appellee.
John A. BRANDT
v.
UNITED TRANSPORTATION UNION, M.N. & S. Committee of
Adjustment, Local 650, Appellant,
v.
MINNEAPOLIS, NORTHFIELD AND SOUTHERN RAILROAD COMPANY, Appellee.
 Nos. 82-1889, 82-1821.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1983.
Decided Aug. 11, 1983.
 
 Robert E. Kopp, U.S. Dept. of Justice, Herman Grant, Regional Sol., T. Timothy Ryan, Jr., Sol. of Labor, John F. Depenbrock, Associate Sol., Margrit W. Vanderryn, Atty., U.S. Dept. of Labor, Washington, D.C., for appellants.
 James M. Samples, Steven R. Anderson, Susan A. Goodnature, Faegre & Benson, Minneapolis, Minn., for Minneapolis, Northfield & Southern R. Co.
 Patrick J. Foley, De Parco, Perl, Hunegas, Rudquist & Koenig, Minneapolis, Minn., for United Transportation Union.
 Before McMILLIAN, JOHN R. GIBSON and FAGG, Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 John Brandt and United Transportation Union Local 650 appeal the district court's judgment in favor of the Minneapolis, Northfield and Southern Railroad. After a bifurcated trial, the court concluded that MNS had complied with the Vietnam Era Veteran's Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021-2026, and that Brandt was not entitled to a retroactive engineer's seniority date. Finding error, we reverse and remand for a determination of Brandt's damages.
 
 I. Background
 
 2
 Brandt started work for MNS on May 28, 1966, as a hostler helper. On February 6, 1968, Brandt changed jobs and worked as a hostler which caused him to receive a MNS firemen's seniority date on that day. Under the applicable collective bargaining agreement (Contract), two separate seniority lists were maintained: one for engineers and one for firemen. The firemen's roster included both employees who performed hostler duties and employees who performed firemen's duties. Brandt left the railroad with a proper leave of absence for active military duty from February 14, 1968, to August 11, 1968, when he was honorably discharged.
 
 
 3
 In the spring of 1968, MNS developed a need for additional engineers. According to Article 2 of the Contract, a fireman or hostler "shall rank on the firemen's roster from the date and time of their first service on any position that is filled from the firemen's roster, and shall be promoted to positions as engineers as provided in Article 3." Article 3 provides that employees on the firemen's roster "shall be examined on Mechanical Department and Operating Rules for promotion [to engineer] within the first five years of actual firing service according to their seniority on the firemen's roster * * *."
 
 
 4
 In the spring of 1968 there were four men on the firemen's roster who were not promoted to engineer. Walter Ranik, firemen seniority date March 5, 1966, had previously entered into a special agreement with MNS and the Union that he would decline promotion to engineer. Chester Hockmen had been offered the opportunity to take the Article 3 tests and had failed. Pursuant to the Contract his firemen's seniority date was lowered from February 10, 1966, to May 16, 1967. On June 3, 1968, Hockmen again started engineer training but he resigned on June 14, 1968, after again failing the tests. Also listed on the firemen's roster in the spring of 1968 was Douglas Boxwell with a seniority date of April 6, 1967. Brandt was the fourth person on the roster but he was not available due to his military service.
 
 
 5
 In the event that there was no one on the firemen's roster eligible for promotion to engineer, MNS was allowed to hire engineers from outside the company pursuant to Contract provision 3(k): "No engineers shall be hired unless the Company and the [Union] Committee agree that there are no firemen eligible for promotion." To fill its need for engineers, MNS, with the consent of the general chairman of the Union, hired Willard Swenson, Ralph Hancock, Samuel St. Pierre and Wendell Skare. None of the four new hires had ever been an engineer with any railroad but they all had experience in performing a fireman's duties as opposed to only performing a hostler's duties.
 
 
 6
 Each of the four new men were assigned student engineer status when they, sequentially, began working for MNS and completed a training program conducted by Ed Gerdes, the sole engineer instructor. This training consisted of operating the engine on road trips with Gerdes instructing them. Vincent McMahon, the superintendent of motor power in charge of the hiring and testing of engineers, would also make trips with the student engineers at the end of their training. McMahon and Gerdes would determine whether the trainee was qualified to be an engineer. Swenson was the first of the new men to begin work and he worked as a student engineer from April 1, 1968 until May 2, 1968, when his training was completed and he received MNS engineer's seniority. Skare was the last of the new men to begin work and to reach engineer status. He started as a student engineer on August 2, 1968 and received an engineer seniority date of September 17, 1968. Under the Contract these men were given a firemen's roster seniority date that coincided with their newly acquired engineer seniority date.
 
 
 7
 When Brandt returned from the military in August of 1968, he still retained his February 6, 1968 firemen's seniority date, and Gerdes informed him that he would be starting engineer's training as soon as Gerdes was available. Gerdes explained that he would be training Skare and then Boxwell and that Brandt would be the next person trained. Boxwell received an engineer's seniority date of November 19, 1968, and Brandt commenced engineer training November 4, 1968. However, Brandt's training as an engineer was interrupted after December 30, 1968, when Gerdes became ill and was unable to continue training him. Brandt resumed training with Gerdes in May of 1969 and was promoted to engineer on May 20, 1969.
 
 
 8
 Because Swenson, Hancock, St. Pierre and Skare began their engineer training while Brandt was on a military leave of absence, they were qualified as engineers before Brandt was trained and received engineer seniority dates before Brandt. Pursuant to the Contract, all four received firemen's seniority dates the same day as their engineer seniority dates and are, therefore, junior to Brandt on the firemen's seniority roster. Article 3(c) of the Contract covers situations where a senior eligible fireman is on a proper leave of absence and therefore not available and a junior qualified fireman is examined and promoted to engineer out of turn. The Contract provides: "As soon as the senior fireman is available, examined and promoted * * * he shall displace the junior fireman, who shall drop back into whatever place he would have held had the senior fireman to be promoted been available and the junior fireman not promoted out of his turn." Relying on this Contract provision and on his rights under the Veteran's Act, Brandt brought suit to advance his engineer's seniority date to one day before Swenson's date, May 1, 1968. Brandt claimed that he would have been trained and promoted to engineer prior to the four new men if he had not been absent due to his military service. He argued that he was entitled to have an engineer's seniority date senior to the four new men.
 
 
 9
 After a two-day trial to the court, the court entered judgment in favor of MNS. In its findings of fact the court concluded that in order to be promoted in 1968, a MNS fireman was required to have "sufficient experience" as a fireman or hostler. Boxwell was found to be ineligible for promotion because at the time the additional engineers were needed, he had approximately one year of experience as a fireman. Likewise, the court found that Brandt was not eligible for promotion to engineer because "[e]ven if he had not entered military service, he would have had only two months of experience as a fireman by the Spring of 1968." Since both Brandt and Boxwell only performed hostler's duties and never performed fireman's duties, the court must have been using the term "fireman" in the broad sense to encompass the employees (fireman and hostler) on the firemen's seniority roster when forming those findings. The court concluded that it was not reasonably certain that Brandt would have achieved an engineer's seniority date senior to the dates of the four new men had he not been absent due to military service.
 
 II. Analysis
 
 10
 Section 2021 of the Veteran's Act provides that one who is inducted into military service and leaves permanent employment has a right to reinstatement in his former position, "or to a position of like seniority, status, and pay." See 38 U.S.C. § 2021(a). The veteran does not lose ground by his absence because he is entitled to the employment status that he would have enjoyed had he continued in his permanent employment without interruption for military service. 38 U.S.C. § 2021(b)(2); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284-85, 66 S.Ct. 1105, 1110-11, 90 L.Ed. 1230 (1946). However, the statute only secures "those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment." McKinney v. Missouri-Kansas-Texas Railroad, 357 U.S. 265, 272, 78 S.Ct. 1222, 1226, 2 L.Ed.2d 1305 (1958). The statute does not provide the returning veteran with the right to a promotion that depends upon the employer's exercise of discretion; only those promotions that follow from seniority or automatic progression are covered. Id. Where a training period is involved, the veteran is entitled to a retroactive seniority date when: (1) the right to enter the training program to qualify for promotion accrues as a perquisite of seniority; and (2) when the veteran successfully completes the training after returning to work. Tilton v. Missouri Pacific Railroad, 376 U.S. 169, 181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964); Goggin v. Lincoln St. Louis, 702 F.2d 698, 701 (8th Cir.1983).
 
 
 11
 Here, Brandt successfully completed the training program for engineers and was promoted to engineer after leaving the military. In determining whether entry into the MNS training program for engineers accrued as a perquisite of seniority, we must decide whether there is a reasonable certainty that the promotion would have accrued if Brandt had not gone into military service and, second, whether the promotion is in the nature of a reward for length of service. See Alabama Power Co. v. Davis, 431 U.S. 581, 589, 97 S.Ct. 2002, 2007, 52 L.Ed.2d 597 (1977); Coffy v. Republic Steel Corp., 447 U.S. 191, 197-98, 100 S.Ct. 2100, 2105, 65 L.Ed.2d 53 (1980); Alber v. Norfolk & Western Railway, 654 F.2d 1271, 1276 (8th Cir.1981). The parties do not dispute the second requirement but disagree as to whether Brandt's promotion to engineer would have been a "reasonable certainty."
 
 
 12
 The Contract provided that seniority on the firemen's roster governed the promotion to engineer and did not establish any minimum amount of time that a person had to be on the roster before he could be trained as an engineer. A maximum time was established in the Contract and MNS was required to offer promotion to engineer within the first five years of listing on the firemen's roster. In 1949, when the Contract was written, MNS had approximately the same number of firemen as it had engineers. However, the number of employees performing fireman's duties at MNS was reduced drastically after a national arbitration agreement, Award 282, was reached in 1963.
 
 
 13
 It is important to remember that two different jobs with different duties were listed together on the firemen's seniority roster. When working as a hostler, the employee would operate an engine in the engine house track area but would not operate an engine out on the road. When working as a fireman, the employee would sit on the left side of the engine, watch crossings and relay signals from the ground crews to the engineer while the engineer was running the engine over the road. An engineer could allow his fireman to run the engine over part of the route. However, Bill Howery, the MNS vice president, testified that before Award 282, MNS traditionally had a requirement that an employee had to have "six months engine service as a fireman in the road and yard service before [he] could become a hostler" because hostlers actually ran engines with no supervision.
 
 
 14
 MNS contends that it had discretion in determining who should be trained as an engineer and that, therefore, Brandt cannot meet the reasonably certain standard. Howery testified that it was management's prerogative to decline to train men with firemen roster seniority dates to be engineers if they had only worked as hostlers and had never actually worked as a fireman. He explained that Brandt and Boxwell, the two men passed over on the firemen's seniority roster in the spring of 1968, were not eligible for promotion at that time. Boxwell was not eligible because "[h]e had had no training in yard or engine service." Likewise, Brandt was not eligible because "[h]e had no training in engine service, either in yard or road service." Since Boxwell had one year's experience as a hostler and Brandt would have had two months experience as a hostler, Howery is referring to their lack of experience in performing a fireman's duties. Howery further testified that other than Brandt's not having worked as a fireman, there was nothing that he was aware of that would make him an undesirable employee that MNS would not want to promote.
 
 
 15
 The critical fallacy in Howery's explanation is that before selecting Brandt for engineer training when he rejoined MNS in August, MNS required nothing more than Brandt's original experience gained before entering the service. Neither Boxwell nor Brandt ever performed fireman's duties before being selected for engineer training; therefore, contrary to Howery's testimony, in actual practice experience in those duties was not required to make Brandt eligible for promotion. In fact, McMahon, the MNS supervisor in charge of hiring engineers, testified that there was no minimum time an employee had to be a fireman before he could be trained as an engineer and that in his experience with MNS, an employee did not actually have to work as a fireman before he could be trained as an engineer. In McMahon's opinion, other than Brandt's absence for military service, nothing else disqualified him from being trained as an engineer in April of 1968.
 
 
 16
 McMahon also explained that before Award 282 MNS did not have any experience with promoting engineers because they had an abundance of firemen that could be or were engineers. However, he stated that after Award 282 when MNS had its first opportunity to make an engineer, its first program was to take the most senior hostler, Yantes, and make him an engineer. Yantes had fifteen months hostling experience and no experience working as a fireman when he was promoted to engineer on May 1, 1967.
 
 
 17
 Besides Yantes, two other engineer training selections occurred at MNS before this dispute involving the spring of 1968 selections. Chester Hockmen, who like Yantes had only worked as a hostler and had never performed a fireman's duties, was given the opportunity to be promoted to engineer but eventually resigned after repeated failures in the required tests. Additionally, MNS bypassed Boxwell and, with the agreement of the Union, hired W.H. Stewart in 1967 to be an engineer. Boxwell had two months firemen's roster seniority at the time Stewart started work as an engineer on June 4, 1967. Howery testified that Boxwell was not qualified for promotion when Stewart was hired because "[h]e never performed any service in road or yard service," the same reason given for Boxwell's being bypassed in 1968. Stewart, on the other hand, had worked as an engineer for MNS and had taken severance pay in 1964 before being rehired in 1967. Boxwell did not raise the issue of a seniority violation and in actual practice he was selected for training as an engineer without acquiring the fireman road or yard service which Howery claims made him ineligible in 1967 and in the spring of 1968.
 
 
 18
 MNS' assertion that seniority did not govern the selection for training to be an engineer because of a management prerogative concerning experience performing fireman's duties must fail in light of the fact that in actual practice four MNS hostlers with no experience performing fireman's duties were selected for engineer training: Yantes, Hockmen, Boxwell and Brandt. Additionally, McMahon, the supervisor actually in charge of hiring the engineers, testified that experience as a fireman was not required and that Brandt was eligible for promotion in the spring of 1968. The Contract language specifies that engineer trainees are selected by seniority on the firemen's roster. The Contract does not make a distinction between employees who perform fireman duties and employees who perform hostler duties. In actual practice MNS made its selections from the firemen's seniority roster in conformity with the Contract provisions with the exceptions of Brandt, who is now before the court, and Boxwell, who did not pursue his seniority rights. As soon as Brandt returned from the service, he was selected for engineer training without any change in his pre-military status in either of two ways: his seniority on the firemen's roster was unchanged and his working experience was unchanged. The selection for promotion to engineer at MNS passed as a perquisite of seniority.
 
 
 19
 In conclusion, the district court correctly recognized that, contrary to the assertions of Howery, either a fireman or a hostler was eligible for engineer training. Actually performing a fireman's duties was not an eligibility requirement since four MNS hostlers with no experience performing a fireman's duties were selected for engineer training. However, the district court's finding that "sufficient experience" as a fireman or hostler was an eligibility requirement is clearly erroneous. There is no minimum time requirement in the record for experience as a fireman or a hostler as a prerequisite for engineer training. In fact, Brandt was selected for training upon his return from the service without acquiring additional working experience. Thus, the district court erred in concluding that it was not reasonably certain that Brandt would have been selected for training in the spring of 1968 if he had not been absent due to military service. Brandt has met the reasonably certain test and is therefore entitled to retroactive engineer seniority. His seniority in the spring of 1968 made it reasonably certain that he would have been selected to train for one of the engineer openings if he had not been serving in the military.
 
 
 20
 On remand, the court must determine the appropriate retroactive seniority date and also determine the appropriate damages due Brandt.
 
 
 21
 Reversed and remanded.