**George E. GOGGIN, Appellant,**

v.

**LINCOLN ST. LOUIS, Appellee.**

**No. 82–1671.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1982.

Decided March 16, 1983.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., Robert S. Greenspan, Susan Sleater, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for appellant.

Thomas M. Hanna, St. Louis, Mo., for appellee; McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., of counsel.

Before BRIGHT, Circuit Judge; FLOYD R. GIBSON, Senior Circuit Judge; and McMILLIAN, Circuit Judge.

BRIGHT, Circuit Judge.

George E. Goggin appeals the decision of the district court denying him lost wages under the Vietnam Era Veterans' Readjustment Assistance Act, 38 U.S.C. §§ 2021–2026 (1976) (the Act). Goggin brought suit against his employer, Lincoln St. Louis (Lincoln), claiming that, upon his return from military service and reemployment with Lincoln, he was entitled to the seniority status he would have earned had he been continuously employed during his military service. Accordingly, Goggin claimed Lincoln should have promoted him immediately upon his reemployment. The district court denied Goggin relief, finding that Goggin qualified under the Act for immediate promotion upon his return from the military, but that he did not have the right to a promotion where no vacancy existed in the higher position. Because Goggin qualified for promotion under the Act, we reverse, and hold that the district court, 540 F.Supp. 46, erred in denying his claim for lost wages.

## I. *Background.*

Lincoln manufactures lubrication equipment and employs approximately 1,500 people. Lincoln hired Goggin in 1971 and placed him in the "L-bracket," Lincoln's entry level position where workers operate the most basic machine shop equipment. Goggin then moved to the machine shop, where job positions are classified from M–5, the lowest machine shop position, to M–1, the highest position in the machine shop. Goggin first became an M–5 "operator" and later an M–5 "inspector," where he remained until November 27, 1973, when he entered the Air Force.[1] Lincoln placed Goggin on military leave of absence until he completed military service in 1977.

During Goggin's absence, Lincoln upgraded the M–5 inspector position to M–4 inspector and abolished the M–5 position. When Goggin returned, Lincoln reemployed him as an M–4 inspector, and he performed essentially the same duties as he had as an M–5 inspector.

Some time after his return, Goggin contacted his supervisors at Lincoln and requested a promotion to the position he would have held had he not taken leave for military service. Lincoln replied that no vacancy existed in a higher position, and promised to promote Goggin when an opening occurred. In September 1978, Lincoln offered Goggin a choice between a promotion to an M–2 "setup" position and an M–1 CIM–X "operator" position.[2] Goggin chose the M–1 position.

Goggin filed suit seeking backpay for the period from August 1977, his date of reemployment at Lincoln, to September 1978, his date of promotion. Basing his claim on the employee seniority lists maintained at Lincoln and on the job placement given workers with seniority equal to or less than Goggin's, Goggin contended that under the Act Lincoln should have, at the very least, reemployed him in the M–2 setup position immediately following his return from military service.[3] As damages, Goggin sought the difference in wages between the M–4 position and the M–2 position based upon the pay scale of the collective bargaining agreement in effect at that time.

## II. *Discussion.*

### A. *Right to Promotion.*

Section 2021 of the Act provides that any person who, as a consequence of being inducted into the United States Military, must leave a permanent position of employment, has a right to be reinstated in his former position, "or to a position of like

---

**1.** An "operator" generally operates one particular machine during production. An "inspector" examines the machines to ensure they are set up and operated according to specifications.

**2.** A "setup" person prepares the machines for operation according to specifications. A "CIM–X" operator sets up, operates, and in-

spects the CIM–X machine, "a computerized-tape computing center" performing drilling, tapping, and reaming operations.

**3.** Initially, Goggin claimed alternatively that he was entitled to be reinstated in an M–1 position. Apparently, Goggin abandoned this claim at trial.

seniority, status, and pay[,]" upon his return. 38 U.S.C. § 2021 (1976).[4] Section 2021 explains the purpose of the Act:

It is hereby declared to be the sense of the Congress that any person who is restored to or employed in a position in accordance with [this Act] should be restored or reemployed in such manner as to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment, or reemployment. [38 U.S.C. § 2021(b)(2).]

In *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), the Supreme Court explained:

[The veteran] does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. * * * He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. [*Id.* at 284–85, 66 S.Ct. at 1110–11.]

This "escalator principle," however, does not assure the veteran "a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors." *McKinney v. Missouri-Kansas-Texas Railroad Co.,* 357 U.S. 265, 271, 78 S.Ct. 1222, 1226, 2 L.Ed.2d 1305 (1958). To be entitled to a promotion or advancement in benefits, a returning serviceman must show that the advancement would have been awarded simply by virtue of continued employment. If a promotion is at least partially dependent on the employer's discretionary determination of fitness and ability, the Act does not accord the veteran a right to an automatic promotion. *Id.* at 272, 78 S.Ct. at 1226. Similarly, the veteran is not entitled to immediate promotion where promotion requires that an employee successfully complete a prerequisite training or qualifying period before promotion. *Tilton v. Missouri Pacific Railroad Co.,* 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964). However, if the right to *enter* a training program and qualify for a promotion passes as a perquisite of seniority, and if upon his return the serviceman successfully completes the training period, then he is entitled to receive a seniority date retroactive to the date he would have completed the training period had his job not been interrupted by military service. *Id.* at 181, 84 S.Ct. at 602.

In determining whether a benefit or promotion accrues as a perquisite of seniority, the Eighth Circuit has followed the two-pronged test set forth in *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 100 S.Ct. 2100, 65 S.Ct. 53 (1980) and in *Alabama Power Co. v. Davis,* 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). *See Alber v. Norfolk and Western Railway Company,* 654 F.2d 1271, 1276 (8th Cir.1981). First, there must be a reasonable certainty that the benefit would have accrued if the employee had not gone into military service. Second, the nature of the benefit must be a reward for length of service rather than a form of short-term compensation for services rendered. *Coffy v. Republic Steel Corp., supra,* 447 U.S. at 197–98, 100 S.Ct. at 2105; *Alber v. Norfolk and Western Railway Company, supra,* 654 F.2d at 1276.

The district court found: (1) there was no experience necessary to move from the M–4

---

**4.** 38 U.S.C. § 2021 provides in pertinent part:
In the case of any person who is inducted into the Armed Forces of the United States under the Military Selective Service Act (or under any prior or subsequent corresponding law) for training and service and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such training and service * * *—

* * * *

(B) if such position was in the employ of a State, or political subdivision thereof, or a private employer, such person shall—
(i) if still qualified to perform the duties of such position, be restored by such employer or the employer's successor in interest to such position or to a position of like seniority, status, and pay[.]

position to the M–2 position; (2) the opportunity to take the higher classification accrued on the basis of seniority alone; and (3) there were other employees junior to Goggin serving in the M–2 position when Goggin returned. Accordingly, the court found it "reasonably certain under *Tilton* that [Goggin] would have had an opportunity to accept the promotion to an M–2 but for his military service."

The district court rejected Lincoln's argument that no employee could be promoted to the M–2 position without first serving as an M–3. Basing its finding on the testimony and company seniority lists exhibited at trial, the court found that employees did in fact move from the M–4 position to the M–2 position without any experience as an M–3. The court also rejected Lincoln's argument that Goggin would not have accepted the promotion had it been offered him, noting that under *Tilton,* the employer cannot defeat the purpose of the statute by asserting such attenuated possibilities. *Tilton v. Missouri Pacific Railroad Co., supra,* 376 U.S. at 181, 84 S.Ct. at 602. The veteran need only show that, "as a matter of foresight, it was *reasonably* certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur." *Id.* (Emphasis added).

Notwithstanding its determination that Goggin satisfied the "reasonably certain" test, the district court denied Goggin's claim for lost wages. The court held that Goggin had no right to a promotion because no vacancies existed in the M–2 position when Goggin returned. The court reasoned that to allow Goggin to "bump" other employees and receive the promotion would afford him a "super-seniority" status not allowed under the Act.

■ After reviewing the record, we find ample evidence to support the district court's finding that "through mere passage of time the opportunity to accept and qualify as an M–2 set-up man would have accrued to plaintiff as a perquisite of seniority." The court's factual finding, therefore, is not clearly erroneous. However, we disagree with the court's conclusion that Goggin was not entitled to a promotion because no vacancies existed in the M–2 position when Goggin returned. Accordingly, we hold that the district court erred in ruling as a matter of law that Goggin was not entitled to a promotion upon his return from the military.

■ In denying Goggin relief, the district court viewed as particularly important the fact that each of Lincoln's machine shop promotions carried a thirty-day subsequent probationary period. If the employee could not perform his new job satisfactorily during the thirty days after promotion, Lincoln could demote the employee to his former position.[5] The district court found that having successfully completed the thirty-day probationary periods, the M–2 employees with less seniority than Goggin had acquired new skills in the M–2 position. The court concluded that to allow Goggin to displace one of these employees would give him greater seniority than the Act intended. We disagree.

The thirty-day subsequent probationary period deemed significant by the district court is not a "training period" that justifies postponing promotion within the meaning of *Tilton.* In *Tilton,* a railroad company initially employed the plaintiffs as carmen helpers. Under a collective bargaining agreement, a carman helper could perform the work of a journeyman carman mechanic when the railroad could not employ enough journeymen carmen mechanics. *Tilton v. Missouri Pacific Railroad Co., supra,* 376 U.S. at 172, 84 S.Ct. at 598. The helper, however, could not achieve the seniority

---

5. Under the then-existing collective bargaining agreement, an employee returning from leave of absence could bump less senior employees in a higher bracket only if the less senior employee were still completing the probationary period. The district court, while recognizing that a collective bargaining agreement cannot take away rights given a veteran by the Act, *see Alber v. Norfolk, supra,* 654 F.2d at 1278, nevertheless found it significant that apparently none of the employees serving in the M–2 position with less seniority than Goggin were still completing their probationary period.

status of a mechanic until he completed 1,040 days of actual work as a mechanic. At the time the plaintiffs in *Tilton* were inducted into military service, they held seniority status as helpers, but had completed part of the required 1,040 days to achieve seniority as mechanics. *Id.* at 173, 84 S.Ct. at 598. The Supreme Court held that although the right to work as a mechanic passed by seniority, and although nonveterans had moved ahead of the veterans on the seniority roster, the returning veterans could not be promoted to mechanics until they completed the 1,040–day prerequisite period of employment training. *Id.* at 181, 84 S.Ct. at 602. Upon completion of the training period, however, the Court held that the veterans could "insist upon a seniority date reflecting the delay caused by military service." *Id.* Once promoted, therefore, the veterans would achieve greater seniority and benefits than less-senior nonveterans, even though the nonveterans had achieved greater proficiency during the veterans' absence.

■ The purpose underlying the holding in *Tilton* is to ensure that veterans are not afforded greater seniority than they would have enjoyed had they not entered the service. They must be qualified for the job. In the case at hand, however, the district court affirmed Goggin's qualification for the promotion by finding that the promotion passed on the basis of seniority alone. The subsequent probationary period at Lincoln was not one in which employees served, for example, as apprentices to more experienced workers, or where they gradually worked up to a particular level of competence before performing their new tasks.[6]

As the Seventh Circuit observed in *Power v. Northern Illinois Gas Company,* 388 F.2d 427 (7th Cir.1968), nothing in the record indicates that those employees promoted during the veteran's absence "had greater ability than [the veteran], nor that any tests were given them that [the veteran] could not have successfully met." *Id.* at 429. Finally, after his promotion to the M–1 CIM–X position, Goggin successfully completed the thirty-day probationary period for that position. Thus, Goggin met the test under *Tilton* of showing, as a matter of hindsight, that his promotion did in fact occur.[7]

■ While those nonveterans working in the veteran's absence will, by virtue of their additional experience, inevitably be more proficient than the returning veteran, *Tilton* and the Act require more than a showing of lost efficiency to deny the veteran his right to an immediate promotion. Courts have repeatedly held that an employer may not deny a veteran his rightful position under the Act (or its predecessor acts) on the basis that the employer would suffer some loss of efficiency or additional expense. *See United States ex rel. Adams v. General Motors Corporation,* 525 F.2d 161, 166 (6th Cir.1975) (where right to promotion accrued in fact on basis of seniority, employer could not deny classification on grounds that higher status required four years' actual work and that promotion system protected its more experienced workers from layoff); *Kay v. General Cable Corporation,* 144 F.2d 653, 656 (3rd Cir.1944) (veteran must be restored position even though temporary replacement more efficient, per-

**6.** By contrast, Lincoln required that no employee could be promoted to an M–1 position without first serving one year as an M–2. Because Goggin has apparently abandoned his claim that he should have received a promotion to the M–1 position, we need not address this issue.

**7.** Lincoln argues that Goggin failed the hindsight test because he did not complete the thirty-day probationary period for the M–2 position. This argument lacks merit. Goggin did not complete the probationary period for the M–2 position because at the time Lincoln of-

fered him a promotion, Lincoln offered Goggin a choice between an M–2 position and an M–1 position. Goggin should not be disadvantaged because he took the higher position when it was finally offered. Testimony at trial established that Lincoln sometimes promoted employees before they had completed the qualifying period for the position in which they were presently serving. Based on these circumstances, we deem it sufficient to satisfy the hindsight test that Goggin successfully completed the probationary period for the more difficult M–1 position.

sonable, and desirable to employer as permanent employee). Nor have courts accepted the argument that a returning veteran should be denied his rightful position because a junior nonveteran employee would be temporarily demoted. *See Houghton v. Texas State Life Ins. Co.*, 166 F.2d 848, 849 (5th Cir.1948) (plaintiff entitled to lost wages where employer refused to reinstate veteran as company president or in like position even though company had elected new president and claimed veteran no longer qualified); *Muscianese v. United States Steel Corporation*, 354 F.Supp. 1394, 1402 (E.D.Pa.1973) (employees have no vested right to senior position that violates veterans' rights under the Act and must expect to be bumped if law is to be enforced as written).

■ It is no defense for Lincoln to allege that the company will be forced to demote or "bump" one of its present employees to promote Goggin. Employers must tailor their workforces to accommodate returning veterans' statutory rights to reemployment. Although such arrangements may produce temporary work dislocations for nonveteran employees, those hardships fall within the contemplation of the Act, which is to be construed liberally to benefit those who "left private life to serve their country." *Fishgold v. Sullivan Drydock & Repair, supra*, 328 U.S. at 285, 66 S.Ct. at 1111.

### B. Damages.

■ Finally, Lincoln claims that Goggin failed to prove his claim for damages because his calculations were too speculative. We disagree. Goggin calculated his damages based on the difference in base pay between an M–4 job and an M–2 job as listed in the collective bargaining agreement for the year prior to his actual promotion. The court received the collective bargaining agreement and Lincoln's seniority lists into evidence. If necessary, the court could have required Lincoln to come forward with its actual payroll records in order

to estimate Goggin's damages. Consequently, we determine that Goggin presented sufficient evidence to allow an award for lost wages.

Accordingly, we reverse and remand to the district court with instructions that Goggin be awarded lost wages as may be appropriate.[8]

---

8. The district court may make such finding regarding lost wages upon the existing record or call for additional evidence from the parties.