DECISION
Before this Court are eight motions in limine filed by the State of Rhode Island, Department of Corrections (Defendant or DOC or State), to exclude testimony and evidence in the underlying military employment discrimination case. In addition, Plaintiff Donald Panarello (Plaintiff) requests a preliminary ruling from this Court regarding the appropriate burden-shifting framework to be used in cases of alleged discriminatory treatment under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. § 4301 et seq. The State also argues that Plaintiff's claims are barred by the doctrine of sovereign immunity. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I FACTS AND TRAVEL
The Plaintiff has been employed as a correctional officer by the DOC for approximately twenty years. During his entire career as a correctional officer, Plaintiff has also been a member of the Rhode Island Air National Guard (RIANG). In June 2000, *Page 2 
Plaintiff was assigned by the federal government to a temporary full-time RIANG position in counter-drug operations based in Cranston, Rhode Island. To perform this service, Plaintiff took a military leave of absence from the DOC. Over the course of the next several years, Plaintiff alleges that the DOC repeatedly refused to promote him to the position of correctional officer lieutenant because he was on military leave. This denial of promotion, Plaintiff alleges, was violative of merit system rules that require candidates to be interviewed in order of their standing on the civil service list.
In 2003, Plaintiff filed the instant action under USERRA and state military antidiscrimination laws, G.L. 1956 § 30-11-1 et seq., alleging that the DOC's failure to promote him while he was on active duty with the National Guard, as well as other disparate treatment, violated both federal and state laws. The Plaintiff further alleges that once he began to complain, his supervisors at the DOC retaliated against him by,inter alia, not permitting him to work at the DOC during his military leave, withholding benefits, taking a temporary appointment away from him, and threatening him with the loss of his job during a dispute over his return to work date.
In September 2006, Plaintiff returned from military leave to his position at the DOC.[1] Approximately one year later, Plaintiff was promoted to the position of lieutenant, but the DOC did not adjust his seniority or award him back pay. The Plaintiff claims that had he been promoted in 2001, as he believes he should have been, he would have returned to work at the DOC where he would have earned more than he did in the military. *Page 3 
 II ANALYSIS 1. Burden of Proof
The Court first will address the burden of proof applicable in this case. The Plaintiff argues that under Velazquez-Garcia v. Horizon Linesof Puerto Rico, 473 F.3d 11, 17 (1st Cir. 2007), a two-prong burden-shifting analysis is employed in USERRA actions. Specifically, Plaintiff contends that after the employee makes an initial showing that military status was "a motivating or substantial factor" in the employer's action, the burden of proof shifts to the employer to prove that the action would have been taken despite the military status. Id. Defendant, relying on Pignata v. American TransAir, Inc., 14 F.3d 342, 346-47 (7th Cir. 1994), among other cases, argues for something closer to the three-prong burden-shifting framework traditionally used in Title VII cases. Under the three-prong framework, after the employee establishes a prima facie case, and the employer meets its burden of articulating a nondiscriminatory reason for its action, the burden shifts back to the employee to prove that the employer's reason is a pretext for its true motives. Id.
Section 4311(c) of USERRA contains a general statement of the burden of proof required to sustain a claim of discrimination. It provides that:
 An employer shall be considered to have engaged in actions prohibited [under USERRA's disparate treatment provision] if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, *Page 4 
application for service, or obligation for service. (emphasis added).[2] 38 U.S.C. § 4311(c).
Notably, this section does not contain language indicating that the employee has the burden of proving that the employer's stated reason for the action was pretext.
Moreover, this precise issue was recently addressed by the First Circuit Court of Appeals in Velazquez-Garcia. There, the Court found, after examining USERRA's legislative history, that Congress intended to adopt the two-prong burden shifting framework of NLRB v. TransportationManagement Corp., 462 U.S. 393 (1983). Under TransportationManagement,
 the employee first has the burden of showing, by a preponderance of evidence, that his or her protected status was a `substantial or motivating factor in the adverse [employment] action'; the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status. Velazquez-Garcia, 473 F.3d at 16 (quoting Transp. Mgmt, 462 U.S. at 401).
The Velazquez-Garcia Court explicitly stated that "the employee does not have the burden of demonstrating that the employer's stated reason is a pretext. Instead, the employer must show, by a preponderance of the evidence, that the stated reason was not a *Page 5 
pretext; that is, that `the action would have been taken in the absence of [the employee's military] service.'" 473 F.3d at 17 (quoting § 4311(c)).
Therefore, the traditional three-prong analysis used in Title VII cases, often called the McDonnell Douglas framework, simply is not applicable under USERRA. Id.; See McDonnell Douglas Corp. v. Green,411 U.S. 792, 802 (1973). Furthermore, it appears that all of the federal circuit courts of appeal that so far have addressed the issue are unanimous in adopting the "substantial or motivating factor test" and "putting the burden on the employer to show lack of pretext."Velazquez-Garcia, 473 F.3d at 16; see, e.g., Coffman v. Chugach SupportServs., Inc., 411 F.3d 1231, 1238-39 (11th Cir. 2005); Gagnon v. SprintCorp., 284 F.3d 839, 853-54 (8th Cir. 2002); Hill v. Michelin N. Am.,Inc., 252 F.3d 307, 312 (4th Cir. 2001); Sheehan v. Dep't of Navy,240 F.3d 1009, 1014 (Fed. Cir. 2001); Gummo v. Vill. of Depew, N.Y.,75 F.3d 98, 106 (2d Cir. 1996).
The Seventh Circuit case cited by Defendant, Pignato, was brought under USERRA's predecessor, which did not contain the same statutory language regarding burden of proof. Therefore, given the clear language of the USERRA statute, as well as the consensus that has emerged thereon among the federal circuit courts of appeal, this Court will follow the two-prong burden shifting analysis as articulated inVelazquez-Garcia. In addition, because the Rhode Island Supreme Court has held it appropriate to look to federal discrimination decisions for guidance when state and federal law runs parallel — See Shoucair v.Brown University, 917 A.2d 418, 426 (R.I. 2007); Plunkett v. State,869 A.2d 1185, 1191 (R.I. 2005) — this ruling applies to both Plaintiff's federal and state law claims. *Page 6 
 2. Sovereign Immunity
The next issue before this Court concerns Defendant's contention that the doctrine of sovereign immunity bars Plaintiff's claims. Citing toSeminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), and it progeny, Defendant first maintains that the Eleventh Amendment to the U.S. Constitution bars Plaintiff's claims brought under USERRA.[3]
With respect to Plaintiff's state law claim, Defendant argues that the applicable statute, G.L. 1956 § 30-11-1 et seq., does not contain an express waiver of the State's inherent sovereign immunity. The Plaintiff counters that the General Assembly waived the State's sovereign immunity when it incorporated USERRA into its general laws. In the alternative, Plaintiff argues that Defendant's view of sovereign immunity underSeminole Tribe is unduly broad and would not bar an action brought under USERRA irrespective of the waiver issue. The Plaintiff further avers that his state law discrimination claim, by the plain language of the statute, is applicable to the State and therefore survives sovereign immunity.
"It is well-settled that when the language of the statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."State v. Burke, 811 A.2d 1158, 1167 (R.I. 2002) (citing Solas v.Emergency Hiring Council of R.I., 774 A.2d 820, 824 (R.I. 2001)). "Only when the statute is ambiguous and susceptible to more than one interpretation does this Court have the responsibility to `glean the intent and purpose of the Legislature from a *Page 7 
consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement of the provisions to be construed. . . ." Castelli v. Carcieri, 2008 WL 5249250, 4 (R.I. 2008) (quoting In reAdvisory Opinion to the Governor, 668 A.2d 1246, 1248 (R.I. 1996)). Moreover, "in enacting a statute the legislature is presumed to have intended that every word, sentence, or provision has some useful purpose and will have some force and effect." State v. Reis, 430 A.2d 749, 752
(R.I. 1981) (citing Providence Journal Co. v. Mason, 116 R.I. 614, 624,359 A.2d 682, 687 (1976)). "The Legislature is also presumed to know the state of existing relevant law when it enacts a statute." Id.
USERRA expressly permits an individual whose rights have been violated by a state government employer to file suit for damages against that state, in a state court. Specifically, USERRA provides that "[a] person may commence an action for relief with respect to a complaint against a State (as an employer). . . ." Section 4323(a)(2)(A). "In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State." Section 4323(b)(2).
USERRA's broad definition of employer to include state governments raises an important federal constitutional question. Since the United States Supreme Court decided Seminole Tribe in 1996, federal statutory provisions permitting private, individual suits against states have been held to violate principles of state sovereign immunity contained in theEleventh Amendment. See Timothy M. Harner, The Soldier and the State:Whether the Abrogation of State Sovereign Immunity in USERRA EnforcementActions is a Valid Exercise of the Congressional War Powers, 195 Mil. L. Rev. 91, 92 (2008). A split in the circuits has developed, however, as to the more specific issue of whether *Page 8 
USERRA's provisions permitting private actions against state government employers is a valid exercise of Congress's War Powers. Id. at 100-101;Compare Velasquez v. Frapwell, 160 F.3d 389, 394 (7th
Cir. 1998) (interpreting Seminole Tribe as applying to "all federal statutes based on Article I [of the Constitution]") with Diaz-Gandia v.Dapena-Thompson, 90 F.3d 609, 616 (1st Cir. 1996) (concluding that Seminole Tribe "does not control the War Powers analysis").
This Court will not reach the constitutional question raised above because it is clear that the General Assembly waived the State's sovereign immunity by necessary implication when it incorporated USERRA, without qualification, within its general laws. Section 30-11-3(b), contained under the chapter entitled "Employment Rights of Members of Armed Forces," provides that:
 "[i]n addition to the provision provided in this section, all National Guard members on state active duty shall be entitled to the rights, protections, privileges, and immunities offered under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), Title 38 U.S. Code, Chapter 43, Sections 4301-4333, Public Law 103-353 [38 U.S.C. § 4301 et seq.]." Section 30-11-3(b).
Further evidence of the General Assembly's intent to adopt USERRA is contained in § 30-1-10, which provides that the "[t]he intent of chapters 1-14 [containing the state's military anti-discrimination laws] is to conform to all acts and regulations of the United States affecting the same subjects, and all provisions of these chapters shall be construed to effect this purpose."[4] See also § 30-1-9 ("All acts of the congress of the United States *Page 9 
. . . relating to and governing the army of the United States and the militia shall, insofar as they are applicable and not inconsistent with the constitution of this state, apply to and govern the militia of this state.").
The implied waiver of sovereign immunity is well-recognized in Rhode Island. See, e.g., Pellegrino v. Rhode Island Ethics Com'n,788 A.2d 1119, 1124 (R.I. 2002); Capital Properties, Inc. v. State,749 A.2d 1069, 1081 (R.I. 1999); Donnelly v. Town of Lincoln, 730 A.2d 5, 10
(R.I. 1999); Reagan Construction Corp. v. Mayer, 712 A.2d 372, 374 (R.I. 1998). Considering that "[t]he Legislature is [] presumed to know the state of existing relevant law when it enacts a statute," State v.Reis, 430 A.2d 749, 752 (R.I. 1981), the General Assembly is deemed to have known, when passing legislation adopting USERRA in its entirety and expressly stating that its purpose is to conform to federal law on the same topic, that it was permitting a private right of action to be brought against the State as an employer. In so doing, the State necessarily has waived its sovereign immunity with respect to Plaintiff's USERRA claim.
The Court also concludes that Plaintiff's state law claim is not barred by sovereign immunity. By its plain language, §§ 30-11-2 to30-11-4, encompassing the rights and remedies of National Guard members, apply to "any employer." See § 30-11-5. The General Assembly apparently saw fit to provide a civil action against all employers violating § 30-11-1 et seq., including the state and its municipalities. Faced with such a clear and unambiguous statute, this Court must give its words their plain and ordinary meaning. See State v. Burke, 811 A.2d at 1167. Accordingly, this Court *Page 10 
concludes that Defendant has waived its sovereign immunity with respect to Plaintiff's federal and state law claims.
 3. Motions in Limine
Defendant has also filed eight motions in limine requesting this Court to rule that certain evidence not be referred to or offered at trial. The Court will discuss each motion in seriatim.
"A motion in limine is `widely recognized as a salutary device to avoid the impact of unfairly prejudicial evidence upon the jury and to save a significant amount of time at the trial.'" BHG, Inc. v. F.A.F.,Inc., 784 A.2d 884, 886 (R.I. 2001). Our Supreme Court reviews a trial justice's decision on a motion in limine for an abuse of discretion.Owens v. Silvia, 838 A.2d 881, 889 (R.I. 2003) (citing Graff v.Motta, 748 A.2d 249, 253-54 (R.I. 2000)). Moreover, "`the granting of a motion in limine need not be taken as a final determination of the admissibility of the evidence.' . . . The trial justice can reconsider the motion in limine during the trial or in rebuttal." Id. (quotingState v. Cook, 782 A.2d 653, 654-55 (R.I. 2001)).
 Defendant's First Motion in Limine
In its first motion, Defendant seeks to preclude two of Plaintiff's co-workers, John Lavery (Lavery) and Joe Forgue (Forgue), from testifying regarding their allegations of military-related discrimination while working at the Department of Corrections (DOC).[5] The Defendant contends that the proposed testimony is irrelevant to the issue of whether DOC officials discriminated against Plaintiff. Further, because Lavery and Forgue's *Page 11 
situations differ from Plaintiff's in certain respects, Defendant argues that allowing them to testify would cause undue confusion and delay and would result in a series of "mini-trials."
The Plaintiff counters that the co-workers' testimony is relevant and admissible for two principal reasons. First, the testimony is relevant to proving Defendant's knowledge of USERRA for the purpose of obtaining liquidated damages. Second, evidence of discrimination complaints by other similarly situated employees is routinely permitted by courts to allow juries to draw an inference of discrimination in the cases before them.
 (i) Liquidated Damages
The Plaintiff's first reason for proffering his co-workers' testimony is that it tends to show that Plaintiff's supervisors at the DOC willfully violated USERRA's provisions. Specifically, Plaintiff contends that at the time Lavery made his complaint in 1998, the then-Director of Human Resources George Truman (Truman) had occasion to read and apply USERRA. This, Plaintiff maintains, is highly probative of Truman's knowledge of the law when later dealing with him.
Section 4323(d)(1)(C) of USERRA provides that "[t]he courtmay require the employer to pay the person . . . liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful." (emphasis added). The liquidated damages provision awards a plaintiff double the actual damages suffered. Id. "Willful" is not defined by the statute, but courts have held that an employer's violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the law at issue. *Page 12 Koehler v. PepsiAmericas, Inc., 268 Fed.Appx. 396, 402-403 (C.A. 6 (Ohio) 2008). The Defendant challenges this Court's authority to assess liquidated damages against the State, citing City of Newport v. FactConcerts, 453 U.S. 247 (1981), in which the United States Supreme Court held that punitive damages are not recoverable against a municipality in a section 1983 suit.
The threshold question to determine the applicability, if any, ofCity of Newport to the instant case is whether USERRA's liquidated damages provision can properly be viewed as punitive. USERRA's legislative history suggests that the provision was considered by some to be punitive in nature. See S. Rep. No. 103-158, at 88 (1993) (expressing concern that the "punitive liquidated damages provision" would increase litigation). In addition, a nearly identical liquidated damages provision — also providing double damages upon a finding of a "willful" violation — contained in the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 626(b), was held to be "punitive in nature" by the Supreme Court in Trans World Airlines, Inc. v.Thurston, 469 U.S. 111, 125 (1985). By analogy, USERRA's liquidated damages provision can also be viewed as punitive because it clearly seeks to punish with double damages the employer who knew or showed reckless disregard for whether its conduct was prohibited by the statute. See Duarte v. Agilent Technologies, Inc., 366 F. Supp. 2d 1036,1037-38 (D.Colo. 2005) (concluding that USERRA's liquidated damages provision is punitive in nature).
Finding that USERRA's liquidated damages provision is punitive in nature does not end the matter. As pointed out by Plaintiff, City ofNewport is distinguishable from the instant case in one important respect: unlike in a section 1983 suit, when Congress *Page 13 
enacted USERRA, it expressly authorized courts to award liquidated damages against a state as employer. See § 4323(d)(3) ("A State shall be subject to the same remedies, including prejudgment interest, as may be imposed upon any private employer under this section.") USERRA, therefore, is consistent with "the general rule" stated in City ofNewport "that no punitive damages are allowed unless expressly authorized by statute." 453 U.S. at 260, n. 21. Accordingly, City ofNewport is not controlling precedent in this case.
Notwithstanding such a distinction, this Court finds the underlying rationale of City of Newport to be persuasive and is not inclined to use its discretion to permit double damages to be awarded against the State. This is because, as Justice Blackmun reasoned, "[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct."City of Newport 453 U.S. at 266-67 (citing Restatement (Second) of Torts § 908 (1979)). Awarding punitive damages against a state "`punishes' only the taxpayer, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party." Id. Indeed, punitive damages imposed upon a state are "a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." Id. Consequently, the Court does not intend to award liquidated damages against the State in this case, even upon a showing of willfulness. *Page 14 
 (ii) Similarly Situated Employees
The Plaintiff's second reason for proffering the testimony of his co-workers is that evidence of discrimination against similarly situated employees would allow the finder of fact to draw an inference of discrimination in his case. Unlike in an employment discrimination action brought under Title VII, Plaintiff is not required under USERRA to show as an element of his case that "his employer treated similarly situated employees outside of the class more favorably." See Salas v.Wis. Dep't of Corr., 493 F.3d 913, 922 (7th Cir. 2007). Rather, Plaintiff must establish that his military status was a motivating factor in Defendant's adverse treatment of him. Section 4311(c)(1). "Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including . . . disparate treatment of certain employees compared to other employees with similar work records or offenses." Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014
(Fed. Cir. 2001). Therefore, in a USERRA action, the fact finder may consider how the employer treated "other employees with similar work records or offenses" when inferring a discriminatory motive.
Here, the Court is satisfied that the evidence regarding the treatment of Lavery and Forgue is relevant and admissible. Like Plaintiff, both Lavery and Forgue are currently full-time correctional officers at the DOC. All are subject to the same supervisors, including the same people in human resources and the same department director. The issues relating to Lavery and Forgue, while not identical to Plaintiff's, are similar in that they apparently relate to promotions and benefits when an employee returns from military leave. To the extent that there are differences between the relative situations of the co-workers and Plaintiff, these go to the weight rather than the *Page 15 
admissibility of the evidence. See Johnson v. Village of Rockton,2007 WL 5720626 (N.D. Ill. 2007) (finding that evidence of complaints by similarly situated employees is admissible in USERRA action).
As to Defendant's particular concern over the validity of Forgue's complaint, the Court finds that the concern is not entirely justified. The Defendant asserts that the State has no obligation to notify absent military employees of opportunities that become available while on leave. Assuming this is correct, Forgue's complaint is also based on an allegation that he was not notified of promotional opportunities when he returned. (See Forgue Affidavit.) Under USERRA's "escalator principle," he would be at least entitled to this information upon reinstatement. Sections 4313(a) and 4316(a). Accordingly, with the important qualification that the Court does not intend to award liquidated damages against the State in this case, Defendant's first motion in limine is denied.
 Defendant's Second Motion in Limine
In its next motion, Defendant seeks to prohibit all evidence of lost earnings by Plaintiff. The Defendant make three specific objections: first, that Plaintiff used the wrong time period to calculate lost earnings; second, that Plaintiff has not provided sufficient documentation of his earnings from the military; and third, that Plaintiff's claim of overtime wages is overly speculative.
 (i) Time Period To Calculate Lost Earnings
The Plaintiff seeks lost wages from March 2001, the date he claims he should have been promoted, to September 2007, the date he actually was promoted. More specifically, Plaintiff argues that §§ 4316(a) and 4311(a) of USERRA support his *Page 16 
entitlement to a promotion while on military leave and, consequently, to lost wages. The Defendant counters that no lost wages could have accrued during that time because it had no duty to promote Plaintiff while he was on military leave. A crucial question in this case concerns what rights, if any, USERRA provides an employee during the time that he or she is on military leave. The issue has particular relevance here because Plaintiff served on active duty in Rhode Island while working part time at the DOC.
The Plaintiff's claim to a promotion while on military leave is governed by § 4316 of USERRA, entitled "[r]ights, benefits, and obligations of persons absent from employment for service in a uniformed service." Section 4316(b)(1) instructs that an employee who is absent from employment for military service is deemed to be on "leave of absence" and
 entitled to rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.
USERRA's legislative history makes clear that § 4316(b)(1)
 would codify court decisions that have interpreted current law as providing a statutorily-mandated leave of absence for military service that entitles service members to participate in benefits that are accorded other employees. See Waltermeyer v. Aluminum Company of America, 804 F.2d 821 (3d Cir. 1986); Winders v. People Express Airlines, Inc., 595 F. Supp. 1512, 1519 (D.N.J. 1984), affirmed, 770 F.2d 1078 (3d Cir. 1985). S. Rep. No. 103-158, at 58 (1993).
Specifically, § 4316(b)(1) codifies the view expressed in theWaltermyer and Monroe v. Standard Oil Co., 452 U.S. 549 (1981) decisions; namely, that employees on military *Page 17 
leave are entitled to "equal, but not preferential" treatment with respect to non-seniority rights and benefits. See Rogers v. City of SanAntonio, 392 F.3d 758, 769 (5th Cir. 2004) (noting that "Congress intended by § 4316(b)(1) to clarify and codify the interpretation of [Veterans' Reemployment Rights Act] VRRA § 2021(b)(3) by the Supreme Court in Monroe and the Third Circuit inWaltermyer, requiring employers, with respect to rights and benefits not determined by seniority, to treat employees taking military leave, equally, but not preferentially, in relation to peer employees taking comparable non-military leaves generally provided under the employer's contract, policy, practice or plan."). Accordingly, to establish entitlement to a promotion during his period of active military service under § 4316(b)(1), Plaintiff must show that his employer permits through contract, policy or practice, similarly situated employees to be considered for promotions during their absences. See
24 C.F.R. § 1002.150 (2008).
Section 4316(b)(1) also must be contrasted with § 4316(a), the escalator principle, which provides that:
 A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.
By its plain language, the escalator principle deals with seniority based rights and only applies to a "person who is reemployed," meaning that the person has satisfied the five eligibility requirements for reemployment under § 4312.[6] The House and Senate reports have summarized how § 4316(b)(1) and § 4316(a) interact: *Page 18 
 Accordingly, while away on military leave, the servicemember would be entitled to participate in whatever non-seniority related benefits are accorded other employees on non-military leaves of absence. In contrast, benefits which are seniority based would not be limited to the treatment accorded employees on non-military leaves of absence, but are to be accorded, after reemployment, as if the servicemember had remained continuously employed under the escalator principle." H. Rep. No. 103-65(I), at 33 (1993); S. Rep. No. 103-158, at 58 (1993) (internal citation omitted) (emphasis added).
The USERRA statute defines "seniority" as "longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment." Section 4303(12). In addition, there is a two-part test for determining whether a right or benefit is seniority based. As set forth by the Eighth Circuit Court of Appeals, cited approvingly in USERRA's legislative history, the test is as follows: "First, there must be reasonable certainty that the benefit would have accrued if the employee had not gone into the military service. Second, the nature of the benefit must be a reward for length of service rather than a form of short-term compensation for services rendered." H. Rep. No. 103-65(I), at 57 (quoting Goggin v. Lincoln St.Louis, 702 F.2d 698, 701 (8th Cir. 1983)).
Therefore, to determine whether a promotion at the DOC is a seniority based right available upon reemployment under 4316(a), Plaintiff must be given the opportunity to prove, first, that there is a reasonable certainty that the promotion would have accrued if he had not gone into military service and, second, that the promotion is in the nature of a *Page 19 
reward for length of service.[7] Goggin, 702 F.2d at 701;20 C.F.R. 1002.212 (2008). As explained in the Federal Regulations:
 As a general rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service. This position is known as the escalator position. The principle behind the escalator position is that, if not for the period of uniformed service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to intervening events. The escalator principle requires that the employee be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job prerequisites, that he or she would have attained if not for the period of service. 20 C.F.R. § 1002.191 (2008).
The Plaintiff also argues that § 4311(a), USERRA's general anti-discrimination provision, provides an independent basis apart from § 4316 for establishing a right to a promotion while on military leave.[8] The Fifth Circuit Court of Appeals in Rogers v. City of SanAntonio, 392 F.3d 758, 769-70 (5th Cir. 2004) addressed this issue and held, after *Page 20 
a thorough examination of USERRA's legislative history, that § 4316, not § 4311, controls the rights of employees while absent for military service. Specifically, the Rogers Court concluded that
 Congress decided to adopt new § 4316(b)(1) to provide more specifically and affirmatively for the accrual of non-seniority rights and benefits by employees while on military duty, rather than continue to rely on the general prohibition against service-related denials of benefits for that purpose. Congress sought by § 4316(b)(1) to guarantee a measure of equality of treatment with respect to military and non-military leaves and to strike an appropriate balance between benefits to employee-service persons and costs to employers. USERRA does not authorize the courts to add to or detract from that guarantee or to restrike that balance.
 For these reasons, we conclude that the district court erred in deciding that § 4311(a), rather than § 4316(b)(1), must be applied in this case. 392 F.3d at 769-70.
This Court agrees with the Rogers Court's conclusion that Plaintiff's claim to a promotion falls under § 4316, which specifically addresses employee rights while on military leave, rather than the general anti-discrimination provision contained in § 4311(a). The rules of statutory construction also support such a conclusion. See WarwickHousing Authority v. McLeod, 913 A.2d 1033, 1036-1037 (R.I. 2007) ("When a specific statute conflicts with a general statute, our law dictates that precedence must be given to the specific statute."); Morton v.Mancari, 417 U.S. 535, 550-51 (1974) (stating that in statutory interpretation a specific statute will not be controlled by a more general statute).
In summary, this Court concludes that Plaintiff would not be entitled to a promotion while on military leave under USERRA unless he can prove that similarly situated employees at the DOC also would be considered for promotions during their *Page 21 
absences. Section 4316(b)(1); Waltermyer, 904 F.2d at 825. If such a policy exists at the DOC, and Plaintiff can prove disparate treatment, the Court can find no fault with his time frame for calculating lost earnings. If no such policy exists, Plaintiff may still be entitled to a retroactive promotion to lieutenant under USERRA's escalator principle if he can prove that such a promotion was reasonably certain to have occurred. Section 4316(a); 24 C.F.R. § 1002.193 (2008) ("promotion must be made effective as of the date it would have occurred had employment not been interrupted by uniformed service[]"). However, even if Plaintiff does establish entitlement to a retroactive promotion under the escalator principle, he would not be entitled to lost wages between the years of 2001 to 2006 because his reemployment rights, including the right to a promotion under USERRA's escalator provision, did not ripen until he returned from his period of service and satisfied the eligibility requirements enumerated in § 4312.
 (ii) Military Pay
The Defendant's second objection to Plaintiff's damages calculation concerns Plaintiff's alleged failure to provide sufficient documentation of his military earnings while on leave of absence. In the limited circumstances in which Plaintiff would be entitled to lost wages between the years 2001 to 2006, Plaintiff's earnings as a lieutenant at the DOC would have to be offset by his earnings while in the military. The Plaintiff has submitted the actual military earnings statements in his possession and suggests that military pay tables can serve as a substitute. The Defendant argues that the military pay tables used by Plaintiff do not include significant military allowances, amounting to up to $24,000 per year, and, therefore, they grossly underestimate Plaintiff's real earnings. *Page 22 
It is a well-recognized principle of law that compensatory damages must be established with reasonable certainty and cannot be speculative. 25 C.J.S., Damages § 38; Rhode Island Turnpike and Bridge Authority v.Bethlehem Steel Corp., 119 R.I. 141, 167-168, 379 A.2d 344, 358 (R.I. 1977) ("Although mathematical exactitude is not required, the damages must be based on reasonable and probable estimates.") In order to meet this standard, Plaintiff's military earnings must include whatever allowances Plaintiff received in addition to his base salary. Accordingly, if Plaintiff proves entitlement to lost wages, Plaintiff's estimate of his military earnings must include any such allowances. Military pay tables alone, to the extent that they do not reflect these allowances, are insufficient.
 (iii) Overtime
The Defendant's third objection concerns Plaintiff's estimate that he would have worked an average of ten hours of overtime per week at the DOC during the years 2001 to 2006. The Defendant contends that the ten hour estimate is speculative and unreliable. The Plaintiff argues that ten hours is, if anything, an underestimate of the average overtime he would have worked. The Plaintiff testified during his deposition that prior to his military leave, he worked an average of 8-20 hours of overtime per week, and since being promoted to lieutenant, he has averaged 14.5 hours per week. The Plaintiff also relies on the affidavit of Ken Rivard, a lieutenant at the DOC experienced in handling grievances and arbitrations, that the average overtime worked by all lieutenants in 2003 and 2006 was 14.23 hours and 15.9 hours, respectively.
Compensatory damages "must be established with reasonable certainty. However, absolute certainty is not required. [I]t is sufficient if a reasonable basis of *Page 23 
computation is afforded, even though the result is only approximate." 25 C.J.S., Damages § 39. The Court finds that Plaintiff has presented sufficient factual support for estimating an average of ten hours of overtime per week. Accordingly, Defendant's second motion in limine is granted in part and denied in part.
 Defendant's Third Motion in Limine
In its third motion in limine, Defendant requests that so-called "panelists" — those who play a role in the promotional process at the DOC — be prevented from testifying as to what they believe Director A.T. Wall's tendencies and intentions are with respect to that process. The Plaintiff argues that evidence of this type is admissible and its weight should be left to the finder of fact to determine. The Plaintiff further contends that since this Director's credibility has been questioned in a prior discrimination case, Plaintiff should be allowed to attack his credibility "by exploring what the panelists believe Wall would have done based on these facts or why he made the selection he did." This Court finds this line of questioning to be without rational basis.
Under Rhode Island Rule of Evidence 701, opinion testimony of lay witnesses is "limited to those opinions which are (A) rationally based on the perception of the witness and (B) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Under this rule, the panelists would be free to testify about the nature of their involvement in the promotional process, including any relevant observations they may have, but there is no proper basis for them to speculate as to what Director Wall was thinking or would have done in a particular situation. If Plaintiff would like to explore this line of questioning, he should call Director Wall himself to testify. The fact that the *Page 24 
Director was found to be not credible in a prior action is immaterial. Accordingly, Defendant's third motion in limine is granted.
 Defendant's Fourth Motion in Limine
In its fourth motion, Defendant seeks to exclude three miscellaneous items of evidence. The first is the testimony of LTC Denis Riel (Riel), who intervened on Plaintiff's behalf during a disagreement with the DOC regarding his return to employment. The Defendant seeks to prevent Riel from acting as an expert on USERRA, and from using a PowerPoint presentation he gave to DOC management on the subject of USERRA. The Plaintiff argues that he does not intend to present Riel as an expert, but that Riel's testimony as a fact witness is relevant to Plaintiff's claim of retaliation and to liquidated damages.
This Court agrees with Defendant that Riel, even if he were designated as an expert, should not be permitted to give his opinion on the proper interpretation of USERRA. It is a well-settled rule that an expert witness may not give opinions on questions of law:
 "As a general rule, an expert witness may not give his or her opinion on a question of domestic law or on matters which involve questions of law, and an expert witness cannot instruct the court with respect to the applicable law of the case, or infringe on the judge's role to instruct the jury on the law. Thus, the trial court must limit expert testimony so as not to allow experts to testify regarding legal conclusions by offering opinions on what the law requires or by testifying as to the governing law. An expert may not testify as to such questions of law as the interpretation of a statute . . ." 32 C.J.S. Evidence § 851 (2008).
The foregoing does not mean, however, that Riel should be prevented from testifying as a fact witness concerning the role he played in intervening on Plaintiff's behalf to the *Page 25 
extent that his testimony is relevant to Plaintiff's claims. Furthermore, the Court does not intend to prevent Plaintiff from using the DOC training in USERRA "as a sword against the State," as Defendant argues. Our Supreme Court has held that "[t]he determination of the value of evidence should normally be placed in the control of the party who offers it." Boscia v. Sharples, 860 A.2d 674, 678 (R.I. 2004) (quoting Wells v. Uvex Winter Optical, Inc., 635 A.2d 1188, 1193 (R.I. 1994)). Furthermore, to the extent that Plaintiff is attempting to show that training in USERRA occurred too late, Rhode Island Rule of Evidence 407 makes evidence of subsequent remedial measures admissible at trial.
The second piece of evidence under this motion that Defendant seeks to preclude involves "the sixty-day difference in pay." This issue concerns a dispute that apparently occurred between Plaintiff and Truman over the correct military pay due to him under the applicable collective bargaining agreement. The Defendant claims that the dispute was resolved and should not be admitted. The Plaintiff argues that the dispute shows that he had to fight "tooth and nail" to receive benefits due to him.
"Retaliation" under USERRA is defined broadly as "any adverse employment action" taken by an employer against a person who has exercised a right under the statute. Section 4311(b) (emphasis added). An "adverse employment action" under USERRA includes the denial of "initial employment, reemployment, retention in employment, promotion, or any benefit of employment," including, but not limited to, rights and benefits under a pension plan, health plan, or employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, as well as the opportunity to select work hours and/or the location of employment. Section 4311(a) and (b); 20 C.F.R. . § 1002.5(b). The Court finds the weight accorded to Plaintiff's claim of retaliation *Page 26 
regarding the dispute over "the sixty-day difference in pay" should be for the finder of fact to determine.
The third piece of evidence that Defendant seeks to exclude concerns "working while on active duty." The Plaintiff alleges that he was singled out by Truman and not permitted to work at the DOC during his period of active duty in Rhode Island. The Plaintiff would like to introduce evidence that describes the encounter with Truman in order to show a pattern of discriminatory motive and retaliation. The Defendant objects, asserting that any evidence of damages based upon the proposed testimony is too speculative because Plaintiff has offered "no definitive schedule" indicating when he would have worked and, furthermore, there is no evidence that Plaintiff had permission from his military supervisor to "moonlight" at the DOC in this fashion.
The Court finds that the proposed testimony is relevant to the issues of discriminatory motive and retaliation and will therefore be admissible for those purposes. Based upon the limited record before the Court, however, it is premature to rule on whether specific damages claimed from the alleged denial to work while on active duty are overly speculative. Accordingly, Defendant's fourth motion in limine is denied.
 Defendant's Fifth Motion in Limine
In its fifth motion, Defendant seeks to prevent Plaintiff from introducing a PowerPoint presentation used by a candidate ("Mullensky") promoted in 2002, allegedly in Plaintiff's stead, which Defendant claims contains sensitive security information about the DOC. The Plaintiff responds that he does not intend to use the presentation unless Defendant argues that it was the reason why Mullensky was more qualified than Plaintiff *Page 27 
for the lieutenant position. If the situation arises, the Court will conduct an in camera review of the presentation.
 Defendant's Sixth Motion in Limine
In its sixth motion, Defendant seeks to prevent Plaintiff from submitting evidence of the criminal convictions of Officer Botas, a DOC correctional officer who was promoted to lieutenant in 2001 and subsequently convicted of seven counts of simple assault on inmates. The Plaintiff maintains that the evidence will become relevant if Defendant argues that Botas was more qualified than Plaintiff for the lieutenant position. Defendant does not object to introducing Botas' disciplinary history at the time of promotion, but objects to evidence of his subsequent disciplinary history and criminal convictions.
Rhode Island Rule of Evidence 403 vests the trial judge with discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice," among other considerations. The Court concludes that any disciplinary history or convictions prior to Botas' promotion in 2001 is conditionally relevant and may be admitted, but that the probative value of the subsequent conviction and firing of Officer Botas, which Defendant maintains occurred seven years later, is substantially outweighed by the danger of unfair prejudice. Consequently, Defendant's sixth motion in limine is granted.
 Defendant's Seventh Motion in Limine
In its seventh motion, Defendant seeks to prevent Plaintiff from presenting evidence of employment positions, other than those identified in his answers to interrogatories, that became available during Plaintiff's military leave. The Defendant *Page 28 
argues that the list "could encompass dozens, if not hundreds, of positions," and since these positions were not specifically identified during discovery, it would be unfair to mention them at trail. The Plaintiff insists that the purpose of mentioning other positions is not to show entitlement to each and every one, but to show that the DOC acted in violation of USERRA by not permitting Plaintiff to bid for positions based on his seniority both during his military leave and when he returned.
As discussed supra, USERRA requires only that employers treat employees on military leave equally with other employers of similar seniority, status, and pay who are on comparable non-military leaves of absence under a contract or agreement, policy, practice or plan in effect during that service. Section 4316(b)(1); Rogers, 392 F.3d at 764. The Plaintiff nevertheless contends that West v. Safeway Stores,Inc., 609 F.2d 147 (5th Cir. 1980) and Allen v.United States Postal Service, 142 F.3d 1444 (Fed. Cir. 1998) support his opposing view that the DOC violated USERRA by treating him merely as it does other employees on non-military leaves by not allowing him to compete for positions while on leave. Plaintiff's reliance on these two cases, however, is misplaced. The West case was legislatively overruled by the enactment of 4316(b)(1). Rogers, 392 F.3d at 769 ("West and its "constructively present" theory of interpretation was disapproved by the Supreme Court in Monroe and legislatively overruled in the codification of Monroe and Waltermyer by USERRA § 4316(b)(1)"). The Allen decision suffers from the same defect: the events of that case occurred in early 1994, before Congress enacted § 4316(b) to codify the "equal, but not preferential" interpretation of VRRA § 2021(b)(3). Id. Therefore, Plaintiff cannot establish entitlement to seniority-based positions while on military leave without evidence that there is some type of non-military *Page 29 
leave available to other employees under which the employee could bid for positions that arise during one's absence.
The Plaintiff is, however, on much firmer ground with respect to his alleged entitlement to seniority-based positions after he returned from military leave. USERRA's escalator principle requires that "a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed" in the position comparable to that which the employee would have held had he or she remained continuously employed. Section 4313(a)(2)(A). The escalator principle includes the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service. Section 4313(a)(2)(A); section 4316(a) (restating the escalator principle); 20 C.F.R. 1002.193 (2008). A two-part test, discussed supra, is used to determine whether a particular right or benefit is seniority based. see Goggin, 702 F.2d at 701;20 C.F.R. 1002.212 (2008).
To prove that Defendant violated USERRA's escalator principle contained in § 4313(a)(2)(A), Plaintiff must be able to describe his experience with the DOC's process, or lack thereof, of ensuring that a returning service member does not step back on the seniority escalator at the point he stepped off, but rather, at the precise point he would have occupied had he kept his position continuously. see Fishgold v.Sullivan Drydock and Repair Corp., 328 U.S. 275, 284-85 (1946) (origin of the escalator principle). The Defendant's motion, which would prevent mention of "other positions," would also inhibit discussion about how the DOC applies USERRA's escalator principle to returning service members. Consequently, Defendant's seventh motion in limine is denied. *Page 30 
 Defendant's Eighth Motion in Limine
In its eighth and final motion, Defendant seeks to strike as untimely Plaintiff's supplemental interrogatory response naming Plaintiff's wife as a potential witness. Super. R. Civ. P. . 33(c) provides:
 Continuing Duty to Answer. If the party furnishing answers to interrogatories subsequently shall obtain information which renders such answers incomplete or incorrect, amended answers shall be served within a reasonable time thereafter but not later than 10 days prior to the day fixed for trial. Thereafter amendments may be allowed only on motion and upon such terms as the court may direct.
The Defendant's motion, while timely when made, has subsequently become moot because the initial trial date has been postponed and has not yet been rescheduled. Therefore, either party may freely amend answers to interrogatories, as a matter of course, until 10 days before the date of the trial, which date has not been assigned. Accordingly, Defendant's eighth motion in limine is denied.
 Conclusion
For the above stated reasons, this Court concludes that the two-prong burden shifting framework set forth in Velazquez-Garcia will be employed in this case and that the State has waived its sovereign immunity as to both Plaintiff's federal and state law claims. In addition, Defendant's third and sixth motions in limine are granted. Defendant's second and fifth motions are granted in part and denied in part. Defendant's first, fourth, seventh, and eight motions are denied. Counsel shall submit an appropriate order for entry consistent with this Decision.
[1] In 2004, Plaintiff also served one year in Afghanistan and Uzbekistan as part of Operation Enduring Freedom.
[2] In addition, in response to the question, "[w]ho has the burden of proving discrimination or retaliation in violation of USERRA?," the federal regulations provide:
 The individual has the burden of proving that a status or activity protected by USERRA was one of the reasons that the employer took action against him or her, in order to establish that the action was discrimination or retaliation in violation of USERRA. If the individual succeeds in proving that the status or activity protected by USERRA was one of the reasons the employer took action against him or her, the employer has the burden to prove the affirmative defense that it would have taken the action anyway. 20 C.F.R. § 1002.22
(2008).
[3] The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment has historically been held to apply to suits by a citizen against his or her own state. See Hans v.Louisiana, 134 U.S. 1 (1890).
[4] In light of the Legislature's clear intent expressed in § 30-1-10
to conform the state's military antidiscrimination laws to USERRA, the Court rejects Defendant's argument that by including the term "state active duty" in § 30-11-3(b), the General Assembly intended for USERRA's protections to apply only in instances when the Governor activates the state's National Guard "after natural disasters such as hurricanes or blizzards."
[5] Lavery is a current employee of the DOC and is apparently the only individual before Plaintiff to have filed a military related discrimination complaint. Forgue, also a current DOC employee, believes that he similarly was passed over for a promotion due to his military service.
[6] The five eligibility requirements to have re-employment rights under § 4312 of USERRA are: (1) the employee must have left his or her civilian employer for the purpose of serving in the uniformed services; (2) the employee must have given the employer advanced notice; (3) the cumulative period of service must not exceed five years, with certain exceptions; (4) the employee must report to employer or submit an application for re-employment; and (5) the employee must not be released from active duty under anything other than honorable conditions.
[7] "A reasonable certainty is a high probability that the employee would have received the seniority or seniority-based right or benefit if he or she had been continuously employed. The employee does not have to establish that he or she would have received the benefit as an absolute certainty. The employee can demonstrate a reasonable certainty that he or she would have received the seniority right or benefit by showing that other employees with seniority similar to that which the employee would have had if he or she had remained continuously employed received the right or benefit. The employer cannot withhold the right or benefit based on an assumption that a series of unlikely events could have prevented the employee from gaining the right or benefit."20 C.F.R. § 1002.213
[8] Section 4311(a) of USERRA provides that:
 A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform services in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation. *Page 1